William Wells-Lee [1] v. Commissioner. Wells-Lee v. Commissioner
Docket No. 2737-63, 2838-63, 3031-63, 3121-63.
United States Tax Court
T.C. Memo 1964-315; 1964 Tax Ct. Memo LEXIS 23; 23 T.C.M. (CCH) 1931; T.C.M. (RIA) 64315; December 9, 1964
*23 William C. Myers, Jr., 117 W. Fourth St. Joplin, Mo., and Max Myers, for the petitioners. Donald W. Geerhart, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined income tax deficiencies against the petitioners, as follows: Petitioners
Year
Deficiency
William Wells-Lee
1959
$3,084.51
James A. and Velma
Yeohan
1959
680.00
1960
860.00
1961
430.09
Leslie E. and Avis V.
Stiles
1959
292.46
1960
291.85
1961
442.48
E. O. and Dorothy
Martin
1959
658.61
1961
190.99 The issues for decision are: 1. Whether certain amounts paid by petitioner-osteopaths to the Tri-State Osteopathic Hospital Association during the years 1959 through 1961 were ordinary and necessary business expenses or capital expenditures. 2. Whether the income tax return filed by petitioner William. Wells-Lee for the taxable year 1959 was a joint or separate return. 3. Whether petitioner Leslie E. Stiles is entitled to deductions in excess of those allowed by respondent for depreciation and operating expenses with respect to a Buick automobile during the years 1959 through 1961. Since petitioner *24 William Wells-Lee offered no evidence on the automobile depreciation issue in Docket No. 2737-63, such issue is treated as abandoned. Findings of Fact Some of the facts were stipulated by the parties and are hereby found accordingly. A timely Federal income tax return for the taxable year 1959 was filed with the district director of internal revenue at Kansas City, Missouri, in the names of "William and Alice Wells-Lee," Webb City, Missouri. James A. and Velma Yeoham, husband and wife, residents of Joplin, Missouri, filed timely joint Federal income tax returns for the taxable years 1959, 1960, and 1961 with the district director of internal revenue at Kansas City, Missouri. Leslie E. and Avis V. Stiles, husband and wife, residents of Joplin, Missouri, filed timely joint Federal income tax returns for the taxable years 1959, 1960, and 1961 with the district director of internal revenue at Kansas City, Missouri. E. O. Martin and Dorothy Martin, husband and wife, residents of Joplin, Missouri, filed timely joint Federal income tax returns for the taxable years 1959 and 1961 with the district director of internal revenue at Kansas City, Missouri. William Wells-Lee, James *25 A. Yeoham, Leslie E. Stiles, and E. O. Martin (hereinafter sometimes referred to as petitioners) are, and were during the years 1959 through 1961, osteopathic physicians and surgeons, practicing in Joplin and Southwest Missouri. The Tri-State Osteopathic Hospital Association (hereinafter referred to as Tri-State), an exempt charitable corporation, was incorporated under the laws of the State of Missouri on January 15, 1959. Tri-State was formed for the immediate purpose of acquiring the Joplin General Hospital in order that it might be used by osteopathic physicians and surgeons. A further purpose for the formation of Tri-State was the eventual construction of a new hospital for use by osteopaths. The use of a hospital was essential to petitioners in the practice of their profession. They experienced some difficulty in using the facilities of other hospitals in the Joplin area with the exception of the Jane Chinn Hospital at Webb City, Missouri. Consequently, in June 1958 a voluntary unincorporated group of Joplin area osteopaths was formed under the leadership of Doctor J. E. Stephens with the objective of acquiring a hospital in Joplin in which osteopaths would be permitted *26 to treat their patients. This group called themselves the Tri-State Ostheopathic Hospital Association (hereinafter referred to as Tri-State Unincorporated). The bylaws of Tri-State, as originally adopted provided, in part, as follows: Article VI - Board of Directors 1. This Association shall be managed by a Board consisting of Sixteen members. * * *
4. Nominations to the Board of Directors shall be made by the Professional Staff of any hospital or hospitals operated by the Corporation. Ten Days prior to the annual meeting or any other meeting called for the purpose of filling a vacancy on the Board of Directors, the Professional Staff shall certify to the Board of Directors a list of nominees, not fewer than the number of Directors to be elected nor more than twice number to be elected. Directors shall be elected from the persons so nominated unless the the Professional Staff fails to make such nominations, and in such event nominations may be made from the floor. 5. The Board of Directors shall have control and management of the affairs, policies and business of this Association, and it shall annually elect from its number a President, a Vice-President, a Secretary, *27 a Treasurer and such other officers as may be deemed necessary. Article VII - Officers * * *
4. The Treasurer shall have care and custody of all moneys belonging to the Corporation and cause such moneys to be deposited in a depository selected by the Board of Directors. * * *
Article VIII - Miscellaneous 1. The Chief of Staff shall be invited to attend all meetings of the Board except such time as the Board may be in Executive Session. No osteopath has ever been elected to Tri-State's Board of Directors or an officer of Tri-State. The Chief of Staff regularly attended Board meetings. Shortly after the formation of Tri-State, and prior to June 9, 1959, a number of Joplin area osteopaths, including petitioners, signed a memorandum agreement which provided, in part, as follows: WHEREAS, the undersigned are in full support of the Tri-State Osteopathic Hospital Association and its efforts to acquire Joplin General Hospital and to build a new hospital for use of the osteopathic profession; therefore The undersigned covenant and agree: 1. That they will join the staff of Joplin General Hospital and will pay a staff fee for the use of Joplin General Hospital in the *28 amount of $2,000.00, on such terms and conditions as are mutually agreeable to the undersigned and the Tri-State Ostheopathic Hospital Association. 2. That in addition to the aforesaid staff fee, in order to secure the performmance of the Tri-State Osteopathic Hospital Association of its covenants and agreements contained in the aforesaid Agreement to Purchase, the undersigned severally agree, for a term ending five years from the date hereof, that if the Tri-State Osteopathic Hospital Association be in default under the terms and agreements of its Agreement to Purchase Joplin General Hospital, on demand, to pay a pro rata share of any sum necessary to cure said default up to $3,000.00, except none of the undersigned agrees to pay an amount in excess of $1,000.00 for said purpose in any one year. The Tri-State Osteopathic Hospital Association agrees that if any such sums are demanded and paid, that it will repay said sums as soon as they are available after providing for the proper operation of the hospital and the fulfillment of the terms of its Agreement to Purchase Joplin General Hospital. At no time was Tri-State in default on its agreement to purchase Joplin General Hospital *29 and there were never any demands made for the additional $3,000 pledge under the terms of that agreement. On June 10, 1959, Tri-State acquired all of the outstanding capital stock of Joplin General Hospital, Inc., a Missouri corporation. From June 10, 1959, until September 17, 1963, the hospital owned by the latter corporation and known as Joplin General Hospital was operated by Tri-State under a lease from Joplin General Hospital, Inc., which specified a rental of one dollar per year. The minutes of the meeting of Tri-State's Board of Directors on June 16, 1959, reveal the following action with respect to the establishment of a staff fee: The Chairman suggested that the next order of business was the determination of the fee, if any, to be charged members of the professional staff for the use of the hospital facilities. After discussion, upon motion by Roy Ford, seconded by Walter Nance, Jr., and unanimously carried, it was RESOLVED that the staff fee of Tri-State Osteopathic Hospital be, and it hereby is determined to be $2,000.00, and it was further RESOLVED that said sum shall be paid in cash or by a promissory note, drawing interest at the rate of 6% per annum on the unpaid *30 balance, payable on such terms and conditions as are agreeable to the hospital administrator and the Board of Directors. On or about June 16, 1959, the assets of Tri-State Unincorporated were turned over to Tri-State and all osteopaths who had contributed any amount to Tri-State Unincorporated were given credit in such amount on the Tri-State staff fee. Petitioners Wells-Lee, Stiles, and Martin were given credit for amounts paid on their Tri-State staff fee and were so notified. Petitioners paid the following amounts to Tri-State during the years indicated: Petitioner
1959
1960
1961
William Wells-Lee
$2,000
James A. Yeoham
2,000
$2,000
$1,000
Leslie E. Stiles
1,150
850
1,150
E. O. Martin
1,800
525 Each of the petitioners claimed such amounts as business deductions in the years paid. Each of the petitioners performed services in the Joplin General Hospital during the years in issue and received substantial income as a result of such services. The purpose of petitioners in making payments to Tri-State was to secure the facilities of a hospital where they could bring and treat their patients and earn income. To this end, each of them paid *31 $2,000 of the above stated amounts as a staff fee and paid varying additional amounts in excess of $2,000 for the purpose of keeping Joplin General Hospital operating. The amounts paid by petitioners were deposited to the general fund of the hospital and used for its operation. Tri-State's regular professional staff consists of 18 osteopaths. Each member of the regular professional staff is required to reapply each year for staff privileges. Such application is first submitted to the professional staff and it in turn transmits the application to the Board of Directors with its recommendation. No such application has ever been rejected. From its inception in 1959, Tri-State's primary objective was to secure a new and larger osteopathic hospital for Joplin area osteopaths. This objective was continuously pursued and was achieved on September 17, 1963, when Tri-State opened its new Oakhill Hospital. Joplin General was then closed. From 1959 to May, 1964, each of the petitioners has continuously practiced his profession in the two hospitals operated by Tri-State. None of them has ever paid further staff fee to Tri-State for the privilege of using either hospital. In his notices *32 of deficiencies respondent disallowed all amounts paid by petitioners as not being ordinary and necessary business expenses. On December 31, 1959, William Wells-Lee and Alice were husband and wife, but they had been living apart for several years. William Wells-Lee filed a Federal income tax return for the taxable year 1959 without his wife's signature on the return. All of the income earned in that year was his; none was hers. She filed no separate return for 1959. At all times from April 1, 1944, to September 17, 1960, William Wells-Lee had his wife's permission to sign joint income tax returns on her behalf and using her name. Leslie E. Stiles claimed depreciation on a 1959 Buick automobile on his Federal income tax returns for the years 1959, 1960, and 1961. The claimed depreciation was computed on the straight-line method with an estimated life of 5 years. He also claimed deductions for automobile expenses for such years in the respective amounts of $495.65, $519.70, and $689.58. Respondent determined that 10 percent of the Buick's use was for personal rather than business purposes. He also determined that the automobile had a salvage value of $700. Consequently, the depreciation *33 and automobile expenses were adjusted by respondent. The automobile was bought by Stiles in February 1959. He also owned and maintained a 1953 Cadillac which he and his family used for personal purposes. Stiles kept no written records distinguishing between business and personal use of his automobile. The 1959 Buick was used in the practice of his profession 95 percent of the time. When it was purchased, Leslie Stiles did not intend to keep it for 5 years and actually kept it for 3 years. The Buick automobile had a useful life of 3 years and a salvage value of $1,400. Petitioner Stiles is entitled to a depreciation deduction of $760 for each of the years 1959, 1960, and 1961. Automobile business expenses were $470.87 for 1959, $493.72 for 1960, and $655.10 for 1961. Opinion 1. Staff fees paid to Tri-State Osteopathic Hospital Association. Section 102 [1] of the Internal Revenue Code of 1954 is intended primarily to cover expenditures of a recurring nature where the benefit derived from the payment is realized and exhausted within the taxable year. Thus, if the expenditure results in the taxpayer acquiring an asset which has an economically useful life beyond *34 the taxable year, or if it secures a like advantage to the taxpayer which has a life of more than 1 year, no deduction of the payment is allowable as an ordinary and necessary business expense. United States v. Akin, 248 F. 2d 742, 744 (C.A. 10, 1957), certiorari denied 355 U.S. 956 (1958). In such event, to the extent that a deduction is allowable, it must be obtained under the provisions of the Internal Revenue Code which allows deductions for amortization, depreciation, depletion, or loss. Here it is quite apparent that each of the petitioners paid the $2,000 staff fee to secure hospital staff privileges of an indefinite duration. Each petitioner continued to enjoy these privileges from early 1959 until May 19, 1964, the date these cases were tried, first at the Joplin General Hospital and later at the new Oakhill Hospital, both of which were operated by Tri-State. The expenditure was not recurring but capital in nature. *35 Although differing somewhat in its facts, this case presents an issue which is substantially the same in principle as that decided by this Court in S. M. Howard, 39 T.C. 833 (1963). There the taxpayer-osteopaths had each paid $5,500 over a 2-year period to the Osteopathic Hospital Association, Inc., of Albuquerque, New Mexico. Because of such payments each acquired staff privileges in the new hospital later opened and operated by that corporation. Just as in the instant case, the taxpayer-osteopaths testified that their primary motivation for making the staff fee payments was to acquire the right to practice in the hospital as a professional staff member. Under such circumstances we held that the staff fee payments were capital outlays. In Grace National Bank of New York, 15 T.C. 563 (1950), affirmed per curiam 189 F. 2d 966 (C.A. 2, 1951), we disallowed the payment of an admission fee for membership in the New York Clearing House Association as a business expense, and said at page 565: The $5,000 fee was paid by the petitioner in order to become a member of the Association. This fee is charged but once and has no fixed relation to any period *36 of time or to the special services rendered by the organization. It is in addition to the annual dues periodically assessed against each member to provide for the expenses of the organization and is to be distinguished from such annual dues. The admission fee is a payment required by the Association of a member-elect as a condition precedent to its becoming a member. It is not a recurring expense, and its benefits are not limited to the taxable year in which it was paid or incurred but will last as long as petitioner elects to remain a member of the Association. It has utility long beyond the tax period involved. As such, it is a capital expenditure rather than an "ordinary" business expense incurred during the taxable year. See also Charles J. Bradley, 41 B.T.A. 153 (1941), involving an initiation fee paid to the New York Stock Exchange upon transfer of use of membership; Mercantile National Bank at Dallas, 30 T.C. 84, 95 (1958), affirmed on other issues 276 F. 2d 58 (C.A. 5, 1960), involving the cost of membership in the Dallas Athletic Club; and Tube Bar, Inc., 15 T.C. 922 (1950), involving the cost of a liquor license. The *37 petitioners have not convinced us that the instant factual context presents a situation so materially different as to alter the rule laid down in S. M. Howard, supra. We therefore hold that the staff fee payments are capital expenditures. Respondent acknowledges that his announced policy is to permit the recovery of capital expenditures similar to those here involved through annual amortization deductions over the period the acquired intangibles will be economically useful to the taxpayer. Rev. Rul. 55-616, 1955-2 C.B. 545. But the difficulty in this case is that the petitioners have failed to provide us with the facts necessary to estimate with reasonable certainty the duration of the economic value of the Tri-State hospital staff privileges to them. We cannot speculate about the amortization deductions that might be allowable. We need evidence and we do not have it. There is no evidence of the age of any of the petitioners. None offered any prediction as to how long he might practice. And no evidence was offered with respect to the average length of an osteopath's professional career. Arguing alternatively in their reply brief, petitioners claim they *38 are entitled to amortization deductions based on the length of time Joplin General Hospital was in existence. There is no merit to this contention because the staff fee paid to Tri-State also extended to petitioners the privilege of practicing in Tri-State's Oakhill Hospital. This privilege still continues to exist. 2. Additional amounts paid to Tri-State. While there is a dispute between the parties as to whether amounts paid in excess of the initial $2,000 also represented staff fees or were sums expended for current hospital operating expenses, we are satisfied from the record that such additional amounts were voluntarily paid by Yeoham, Stiles, and Martin because they thought the money was needed to keep the Joplin General Hospital in operation. However, the record does not disclose exactly what disposition Tri-State made of these payments. The pertinent corporate records are not in evidence. Unfortunately, even though the amounts may have been used for current hospital operating expenses, the petitioners cannot claim such payments as their business expenses. The Joplin General Hospital was not owned and operated by them but by a separate corporate entity, Tri-State. Granted, *39 the payments benefited petitioners as well as Tri-State, but they are nonetheless deductible expenses of the corporation. The statute does not permit the deduction by one taxpayer of expenses of a separate and distinct taxpayer. See Deputy v. duPont, 308 U.S. 488 (1940); Welch v. Helvering, 290 U.S. 111 (1933); Noland v. Commissioner, 269 F. 2d 108 (C.A. 4, 1959; and Caldwell & Co., 26 B.T.A. 790 (1932), affd. 65 F. 2d 1012 (C.A. 2, 1933). The obligations were those of Tri-State and not those of the individual petitioners. Consequently, it is our view that such additional amounts paid by petitioners were not deductible by them as ordinary and necessary business expenses. 3. Joint return. The fact that Alice Wells-Lee did not sign the 1959 income tax return filed by her husband, William, or know that her name was signed to it by him does not necessarily mean that the return was not and could not be a joint return. Muriel Heim, 27 T.C. 270 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958). The determinative factor is whether the spouses intended to file a joint return, their signatures merely indicating *40 such intent. Hyman B. Stone, 22 T.C. 893 (1954). Intent may be inferred from the acquiescence of the nonsigning spouse. We stated in Myrna S. Howell, 10 T.C. 859, 866 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949): The 1941 return is not signed by petitioner. Her failure to sign that return is not alone determinative. It was held in Joseph Carroro, 29 B.T.A. 646, 650, that where a husband filed a joint return, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife. See also W. L. Kann, 18 T.C. 1032, 1043 (1952), affd 210 F. 2d 247 (C.A. 3, 1954), certiorari denied 347 U.S. 967. The instant case is even stronger than Carroro and Kann because Alice Wells-Lee had expressly given William permission to sign her name to their joint Federal income tax return for the year 1959. The return was joint. We decide this issue for petitioner William Wells-Lee. 4. Automobile expenses and depreciation. We are convinced by the testimony of Leslie E. Stiles that at least 95 percent of the use of his 1959 Buick *41 automobile was for business purposes. There was no evidence to contradict his testimony. The issue is one of fact which we must determine from the evidence presented. We have included in our findings of fact the amounts of allowable automobile business expenses for 1959, 1960, and 1961. In addition, we determined for depreciation purposes that the automobile had a useful life of 3 years, instead of 5, and a salvage value of $1,400. Respondent erred in disallowing part of the amount of depreciation claimed by petitioner. To reflect the determinations contained herein, Decisions will be entered under Rule 50. Footnotes
1. Consolidated herewith are the following proceedings: James A. Yeoham and Velma Yeoham, Docket No. 2838-63; Leslie E. Stiles and Avis V. Stiles, Docket No. 3031-63; and E. O. Martin and Dorothy Martin, Docket No. 3121-63.↩
1. SEC. 162 TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -↩